**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **HERNDON CROUCH, DAN KLABANOFF** ) | |
| **and WILLIAM ALLEN, JR.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **No. 3-11-0903** |
| **v.** ) | **Jury Demand** |
| ) | **Magistrate Judge Griffin** |
| **WESTERN EXPRESS, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

### DEFENDANT WESTERN EXPRESS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL

Defendant Western Express, Inc. ("Defendant") hereby files this Memorandum of Law in Support of its Renewed Motion for Judgment as a Matter of Law, or, in the alternative, Motion for a New Trial, and states as follows.

## I.  INTRODUCTION

Despite the jury's verdict, the evidence admitted in the record is insufficient to prove age discrimination using direct or circumstantial evidence.  As it relates to direct evidence of age discrimination, Plaintiffs' proof does not meet the standards set forth by the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit").  The alleged statements are too ambiguous, too attenuated in time, not made by decision-makers, and/or not related to the decision process.  Therefore, the statements cannot constitute direct evidence of age discrimination.  Even if the ambiguous statements somehow did prove discrimination *vel non*, Defendant's evidence showed it would have made the same decisions concerning Plaintiffs regardless, negating liability.  Under the standards for circumstantial evidence, Plaintiffs lack any proof that Defendant's

legitimate, non-discriminatory reasons for terminating Plaintiffs were a pretext for age discrimination. Moreover, even if the evidence supported findings of Age Discrimination in Employment Act ("ADEA") violations, it falls far short of establishing willful violations of the ADEA. This also necessitates a finding for Defendant that its actions were not willful and the denial of liquidated damages.

Alternatively, this Court should grant Defendant's Motion for a New Trial based on three independent grounds. First, given Plaintiffs' lack of direct and circumstantial evidence of discrimination, the jury's verdict was against the clear weight of the evidence, especially given Plaintiffs' utter lack of rebuttal evidence to Defendant's legitimate, non-discriminatory reasons for termination. Second, a new trial is warranted because the admission of the testimony of Shawn Fancher concerning stray remarks Clarence Easterday allegedly made was erroneous and not harmless because it was not relevant to the case. Even if relevant, any probative value the statements did have was substantially outweighed by the danger of unfair prejudice and confusion of the issues for the jury. Finally, a new trial should be granted because the Court's jury instruction regarding willfulness under the ADEA was erroneous, confusing, misleading, and prejudicial to Defendant because it did not properly instruct the jury that upon a finding of willfulness, any award of back pay rendered by the jury would be automatically doubled as liquidated damages. Likewise, the verdict forms fail to contain the necessary language advising they jury of the consequences of a finding of willfulness.

As explained more fully below, on all of these grounds, Defendant's Renewed Motion for Judgment as a Matter of Law, or in the alternative, Motion for a New Trial, should be granted.

7/3123349.7
202855-301002

## II.  RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

**A.**     *Standard of Review*

If the Court does not grant a Motion for Judgment as a Matter of Law during the trial, a movant may "file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59" within 28-days of entry of the judgment.  Fed. R. Civ. P. 50(b).  "In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law."  *Id.*

A renewed motion for judgment as a matter of law may be granted "if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party."  *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007).

Applying this standard of review to the instant case, reasonable minds can come to only one conclusion: Plaintiffs were not terminated because of their age.

**B.**     *Defendant's Alleged Statements Do Not Constitute Direct Evidence of Age Discrimination*

Under the ADEA, a "plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Finan. Servs., Inc.*, 557 U.S. 167, 177-78 (2009).[1]  This Court should grant Defendant's Renewed Motion for Judgment as a Matter of Law because Plaintiffs' evidence –

---

[1] In addition to the ADEA, Plaintiffs alleged Defendant violated the Tennessee Human Rights Act.  (Compl.)  The Sixth Circuit "appl[ies] the same analysis to age-discrimination claims brought under the THRA as those brought under the ADEA."  *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 620 (6th Cir. 2006).  Accordingly, for purposes of this Memorandum, Defendant's arguments concerning the ADEA apply with equal force to Plaintiffs' THRA claims.

3

either direct or circumstantial – was insufficient to show that age was the "but-for" cause of their terminations.

First, the various statements attributed to Defendant's employees are too isolated, ambiguous, and unrelated to the decision-making process to constitute direct evidence of age discrimination. "Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). "In other words, direct evidence is composed *of only the most blatant remarks*, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor.'" *Tibbs v. Calvary United Methodist Church*, No. 11-5238, 2012 WL 5861725, at *3 (6th Cir. Nov. 20, 2012) (quoting *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011)) (attached as **Exhibit A** to Motion) (emphasis added). An example of a blatantly discriminatory remark would be "fire [the plaintiff] because he is too old." *Richie v. Indus. Steel, Inc.*, 426 F. App'x 867, 871-72 (11th Cir. 2011). "Isolated and ambiguous comments are insufficient to support a finding of direct discrimination." *Tibbs*, 2012 WL 5861725, at *3 (quoting *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 239 (6th Cir. 2005)).

"In age-discrimination cases, allegedly discriminatory remarks are evaluated by considering four factors:

> (1) Whether the statements were made by a decision-maker or by an agent within the scope of his employment;
>
> (2) Whether the statements were related to the decision-making process;
>
> (3) Whether the statements were more than merely vague, ambiguous or isolated remarks; and
>
> (4) Whether they were made proximate in time to the act of termination

7/3123349.7
202855-301002

*Diebel v. L & H Res., LLC*, 492 F. App'x 523, 527 (6th Cir. 2012).  "No single factor is dispositive; they must be evaluated as a whole."  *Id.*

The analysis below examines each of the four alleged statements submitted as constituting direct evidence of discrimination under these four factors.  Upon application, it is clear that the Defendant's alleged statements do not constitute direct evidence of age discrimination.

1.  *"Don't You Think It's Time to Let Some Younger People Come In and Have the Opportunity to Prove Themselves?"*

About 45 days before Plaintiff Dan Klabanoff was laid off in July of 2011, Ron Rich, the Breakdown Department Manager, allegedly made this statement to Klabanoff.  (Trial Testimony (Trial Test.) of Dan Klabanoff, p. 24) (ECF No. 62) (transcript of testimony attached as **Exhibit B** to the Motion).  Even if made, this statement plainly does not equal direct evidence of age discrimination.  First, this statement is unavoidably vague and ambiguous, and comes nowhere close to the Sixth Circuit's "blatant" standard as it requires an inference to constitute discrimination.  *Umani*, 432 F. App'x at 458.  Second, this statement is unrelated to the decision-making process as Klabanoff was laid off (along with four other employees, including three younger workers) when the breakdown department's night and weekend shift was eliminated in July of 2011.  (Trial Test. of Erik Morrison, pp. 15, 17) (ECF No. 66) (transcript of testimony attached as **Exhibit C** to the Motion).  Third, this statement is not proximate in time to the termination decision as it occurred 45-days before his termination.  Fourth, this statement in no way implies that Klabanoff would be terminated.   Finally, Rich was not the ultimate decision-maker as it related to Klabanoff, and therefore this statement cannot be direct evidence of discrimination. (Trial Test. of Clarence Easterday, pp. 20-27) (ECF No. 65) (transcript of testimony attached as **Exhibit D** to the Motion); *Rowan*, 360 F.3d at 550 ("Statements by non-

5

decision makers, or statements by decision makers unrelated to the decisional process itself [can not] suffice to satisfy the plaintiff's burden of demonstrating animus.") (citations omitted).

2. *"At My [Klabanoff's] Age, Don't You Think the Stress is Going To Be a Little Much For Me?"*

Rich also allegedly made this statement to Klabanoff about 45 days before Klabanoff was laid off.  (Trial Test. of Klabanoff, p. 25).  Like the above comment, this statement also does not satisfy the Sixth Circuit's factors for direct evidence of age discrimination.  Initially, this statement is not blatantly discriminatory but is vague and requires a huge leap to even be arguably related to Klabanoff's employment status, which means it is not direct evidence of discrimination.  *Rowan*, 360 F.3d at 548.  Moreover, this statement about "stress" is in no way related to the decision to lay off Klabanoff and the other night/weekend shift employees when that work was outsourced to a third party vendor.  The alleged statement also occurred 45 days before the layoff, which is not proximate in time.  Finally, as stated above, Rich was not the ultimate decision-maker concerning Klabanoff, and therefore the statement cannot be direct evidence.

3. *"Situation of My [Klabanoff's] Age and Giving an Opportunity to New Younger People Coming In and Stress Level"*

Klabanoff testified that Rich also allegedly made some statement to this effect about 45 days before he was laid off.  (Trial Test. of Klabanoff, p. 25).  This statement is vague and ambiguous and does not meet the Sixth Circuit's "blatant" standard for direct evidence as it requires an inference.  Further, this statement is not proximate in time and is completely unrelated to the decision-making process when Klabanoff and the other night and weekend shift employees were laid off when their shift was outsourced.  (Trial Test. of Klabanoff, pp. 44-46).

7/3123349.7
202855-301002

Finally, this statement was not made by the ultimate non-decision maker, and therefore cannot constitute direct evidence of discrimination.

4. *"If You Get to a Hundred and Ten Percent, In Other Words Speed Up,... I Might Just Get You On Days. But Again, At Your Age, I Don't Know About That."*

Finally, a couple of weeks before Plaintiff Herndon Crouch was terminated in January of 2011, Rich allegedly made this statement to Crouch. (Trial Test. of Herndon Crouch, pp. 12-13) (ECF No. 63) (transcript of testimony attached as **Exhibit E** to the Motion). This statement is not direct evidence of discrimination because it has nothing to do with Crouch's termination or the decision-making process. Moreover, this statement is too vague and ambiguous to constitute blatant evidence of discriminatory animus.

Although the statement may be proximate in time and made by a decision-maker, the comment itself is vague, comes nowhere close to being blatant, and was unrelated to the decision not to retain Crouch as a breakdown coordinator on nights. As set forth above, when evaluating these factors as a whole, the alleged comment does not constitute direct evidence of age discrimination.

Therefore, these four statements do not equate to direct evidence of age discrimination because they are ambiguous, isolated, not proximate in time, not related to the decision-making process, and/or not made by the actual decision-makers.

C. *Even if the Statements Constitute Direct Evidence, Defendant Would Have Made Same Decision Regardless*

Even if the statements described above constitute direct evidence of discrimination, Defendant demonstrated that it would have undertaken the same action even if it had been motivated by impermissible discrimination. "Once an employee shows that unlawful discrimination was a motivating factor in the adverse employment action, 'the burden of both

7

production and persuasion shifts to the employer to prove that it would have [undertaken the same action] even if it had not been motivated by impermissible discrimination." *Arnold v. Reliant Bank*, No. 3:11-cv-1083, 2013 WL 1182563, at *8 (M.D. Tenn. March 21, 2013) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)) (attached as **Exhibit F** to the Motion); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989). In *Nguyen*, the Sixth Circuit explained that "[i]n direct evidence cases, once a plaintiff shows that the prohibited classification played a motivating part in the employment decision, the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even if it had not been motivated by impermissible discrimination." 229 F.3d at 563.

Here, even if Rich's comments regarding Klabanoff constituted direct evidence of discrimination, Defendant would have laid off Klabanoff and the other employees regardless. Defendant's evidence was clear: it made a business decision to eliminate the night and weekend shift in the breakdown department when it outsourced the work to a third party vendor. The decision was made by Erik Morrison, Director of Maintenance, who determined that the Company could obtain better leverage from a vendor that was providing these same services nationwide for various trucking companies resulting in cost savings and improved efficiency. (Morrison is not attributed with making any alleged discriminatory statements about Klabanoff's age). (Trial Test. of Erik Morrison, pp. 15-16). Morrison consulted with Rich who supported the decision. (Trial Test. of Ron Rich, pp. 22-23) (ECF No. 67) (Transcript of testimony attached as **Exhibit G** to the Motion). The decision impacted four other employees who were also laid off, three of whom were substantially younger than Klabanoff.[2] Morrison made this

---

[2] Klabanoff confirmed that the others laid off in July 2011 included Jimmy Sawyer (in his 40s), Connie Roberts (in her 40s), Mitchell Pruitt (age 60), and Joseph Gallas (in his mid 20s). Gallas who was laid off from the day shift

decision in consultation with Clarence Easterday who, in turn, analyzed the demographics of the employees laid off and determined that they had been treated fairly and that age, race, and gender were not a factor. (Trial Test. of Easterday, pp. 20-22).

Furthermore, even if Rich's one innocuous statement to Crouch equates to direct evidence of discrimination, Defendant would have made the same employment decision as it related to Crouch. The alleged comment by Rich is completely unrelated to the decision to lay off Crouch. More importantly, Rich was approached by Danny Jaye, former Maintenance Director, who initially selected Crouch to be laid off as Parts Manager, and Rich agreed to see if he could find a spot for Crouch as a breakdown coordinator on nights in an effort to upgrade his current staff. (Trial Test. of Rich, p. 11); (Trial Test. of Danny Jaye, p. 12) (ECF No. 68) (transcript of testimony attached as **Exhibit H** to the Motion). Certainly, if Rich was biased against Crouch because of his age, would he not have agreed to give Crouch a chance in the breakdown department when he could have just a easily said "No", and Jaye would have had to lay off Crouch.[3]

As it turned out, Rich decided rather quickly that Crouch's lack of effort and productivity did not support keeping him on as a coordinator and would not be an "upgrade" to his staff.[4] Even with the conflicting testimony of whether Crouch was adequately trained, what his schedule was and whether he was considered for day shift, he did not meet the productivity criteria that Rich expected in order to keep him on as a coordinator and let someone else go.

---

when night shift coordinator Dan Golden (in his mid 50s) was transferred to days and replaced Gallas. (Trial Test. of Klabanoff, pp. 39, 44-47); (Trial Test. of Morrison, pp. 17-19).

[3] Crouch made no complaint about Jaye letting him go as Parts Manager.

[4] Jaye, like Rich, testified that Crouch's work ethic was lacking, he did not show initiative, and he failed to put in the hours needed to do the job. (Trial Test. of Jaye, pp. 8-10, Def. Ex. 3); (Trial Test. of Rich, pp. 13, 35).

7/3123349.7
202855-301002

(Trial Test. of Rich, pp. 35-37). Thus, Jaye's decision to lay off Crouch due to his lack of work ethic (which Rich's observations confirmed) was ultimately implemented by Rich two weeks later.

### D. *If Circumstantial Evidence is Relied Upon, then Plaintiffs Have Insufficient Evidence of Pretext*

In addition to insufficient direct evidence, Plaintiffs lack the requisite circumstantial evidence of age discrimination because they have no evidence to show that Defendant's legitimate, non-discriminatory reasons were pretextual.[5] "It is not enough . . . to disbelieve the employer; the factfinder *must believe the plaintiff's explanation* of intentional discrimination." *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 728 (6th Cir. 2004) (*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993)). The Sixth Circuit has overturned jury verdicts and reversed trial courts' denials of motions for judgment as a matter of law based on insufficient evidence of pretext. *Id.* at 732 (reversing jury verdict and trial court's denial of employer's motion for judgment as a matter of law based on insufficient evidence for rational jury "to conclude that the true reason for the discharge was racial discrimination"); *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 602 (6th Cir. 2001) (overturning jury verdict and reversing district court's denial of employer's motion for judgment as a matter of law because of plaintiff's lack of evidence of pretext); *Butts v. McCullough*, 237 F. App'x 1, 8 (6th Cir. 2007) (holding that district court erred by not granting judgment as a matter of law based on finding of weakness of *prima facie* case and "showing of pretext").

---

[5] Once a defendant employer submits evidence of a legitimate, non-discriminatory reason for the adverse employment action, then the plaintiff must "produce sufficient evidence from which the jury may reasonably reject the employer's explanation as pretextual." *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 725 (6th Cir. 2012). ""For a plaintiff to show pretext, he must show the employer's given reason for its conduct [(1)] had no basis in fact, [(2)] did not actually motivate the defendant's challenged conduct, or [(3)] was insufficient to warrant the challenged conduct." *Id.* (citations omitted).

10

Indeed, the United States Supreme Court has found that one of the factors for whether a motion for judgment as a matter of law should be granted is "*the probative value of the proof that the employer's explanation is false*." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148-149 (2000) (emphasis added). The Supreme Court went onto state that an employer "*would be entitled to judgment as a matter of law* if . . . the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* at 148.

As demonstrated below, Plaintiffs presented no relevant evidence showing that Defendant's proffered reasons for terminating Plaintiffs were pretextual and that age discrimination was the true reason. Meanwhile, Defendant presented abundant and uncontroverted evidence showing the legitimacy of its adverse employment decisions, entitling Defendant to an entry of judgment as a matter of law entered in its favor.

      1.      <u>Defendant's Legitimate, Non-Discriminatory Reason for Laying Off Klabanoff</u>

As articulated above, Defendant laid off Klabanoff and four other breakdown department employees from the night and weekend shift when it outsourced that work to a third party vendor. There is absolutely no evidence that this decision was not a legitimate business decision based on Defendant's determination that it could improve operations and decrease costs by using a vendor who already provided these services for other trucking companies across the country.

      2.      <u>Klabanoff's Evidence Insufficient to Show Defendant's Decision Pretext for Age Discrimination</u>

Klabanoff presented no evidence to rebut Defendant's reasons for its actions or that the reasons for its decision were not true. Klabanoff testified that he found out about the outsourcing while he was on vacation when he got a call from a vendor advising him of such, but that means

11

nothing as it relates to pretext. (Trial Test. of Klabanoff, pp. 25-26). Moreover, he presented no evidence that contradicted that the layoffs impacted three substantially younger breakdown department employees, a fact that he acknowledged, or that any other supervisory positions were available in the department that would have allowed Klabanoff to remain employed. Finally, despite having some 45 days to consider the ramifications of Rich's alleged age biased comments, Klabanoff never complained to anyone in management about the comments. (Trial Test. of Klabanoff, p. 56).

       3.      <u>Defendant's Legitimate, Non-Discriminatory Reason for Laying Off Crouch</u>

Crouch was already slated to be laid off when Jaye removed him from the Parts Manager position and would not have been given the opportunity to retain his employment unless Rich had agreed to give him a chance to see if he could perform better than any of the existing night shift breakdown coordinators. Rich did not have a need for another coordinator on nights but saw it as a chance to upgrade his staff. (Trial Test. of Rich, p. 11). However, Crouch was not engaged and not productive. Accordingly, Rich saw no reason to delay the inevitable and as approved by Morrison, laid Crouch off; in essence, merely delaying Jaye's original decision by two weeks. (Trial Test. of Morrison, pp. 13-14).

       4.      <u>Crouch's Evidence Insufficient to Show Defendant's Decision Pretext for Age Discrimination</u>

Crouch did not present any evidence that Defendant's reason for laying him off was a pretext for age discrimination. He claimed he did not get adequately trained and that his duties were unclear, but he was not able to rebut Rich's assessment regarding his lack of initiative and productivity as the reasons for not keeping him as a coordinator. In fact, Crouch's own testimony regarding his confusion as to Rich's expectations underscored his disengaged attitude

12

and lack of initiative, and failed to cast any legitimate doubt on Rich's stated reasons for not retaining him.

**E.** ***Plaintiffs' Evidence Does Not Support a Finding of Willfulness Under the ADEA***

To support a finding of willfulness, the evidence must show that the defendant acted willfully in violation of the ADEA or in "reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 614 (1993) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126 (1985)). The Supreme Court has found that in enacting the ADEA, "Congress aimed to create a 'two-tiered liability scheme' under which some, but not all, ADEA violations would give rise to liquidated damages." *Id.* Accordingly, willful conduct is not present when an employer merely knows that the ADEA is "in the picture." *Id.* (quoting *Thurston*, 469 U.S. at 127-28). Furthermore, "[i]f an employer acts 'reasonably and in good faith in attempting to determine whether its plan would violate' the [ADEA], liquidated damages are not appropriate." *Koehler v. PepsiAmericas, Inc.*, 268 F. App'x 396, 403 (6th Cir. 2008) (citing *Thurston*, 469 U.S. at 129; *Hazen Paper*, 507 U.S. at 616; *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988)).

Moreover, even if the facts support a finding that the ADEA was violated, that does not mean that the violation was willful as additional evidence is required for liquidated damages to be properly awarded. *Jarvis v. Sauer Sundstrand Co.*, 116 F.3d 321, 324-25 (8th Cir. 1997) (citation omitted) ("In order that the liquidated damages be based on evidence that does not simply duplicate that needed for the compensatory damages, there must be some additional evidence of the employer's reckless disregard."). Notwithstanding the jury's finding that the ADEA was violated, Plaintiffs most certainly lack "additional evidence" showing Defendant

7/3123349.7
202855-301002

knew or recklessly disregarded that its conduct was prohibited by the ADEA. Accordingly, the finding of willfulness regarding the Plaintiffs is not warranted and should be set aside.

In Klabanoff's case, Defendant's evidence showed that Easterday reviewed the ages of all employees impacted by the outsourcing decision, discussed the rationale for the decisions with Morrison and Rich, and determined that age was not a factor in the selection of the four employees laid off (three of whom were substantially younger than Klabanoff). Defendant's affirmative step to review the process to see whether there was an adverse impact upon any protected age group employees clearly contradicts a finding of willfulness or reckless disregard. This is just the type of action by an employer that the Supreme Court has held reflected good faith efforts at compliance under the ADEA. *See Thurston*, 469 U.S. at 129 (<u>reversing award of liquidated damages because "the record makes clear that TWA officials acted reasonably and in good faith in attempting to determine whether their plan would violate the ADEA"</u>) (emphasis added); *see also Purcell v. Seguin State Bank & Trust Co.*, 999 F.2d 950, 958 (5th Cir. 1993) (reversing jury's finding of willfulness because merely knowing the ADEA was "in the picture" insufficient to show willfulness).

As it relates to Crouch, the existence of a single ambiguous statement allegedly made by Rich falls far short of establishing willfulness. Crouch was let go only after Rich gave him a chance to retain employment from his layoff as Parts Manager. But it did not work out, and Morrison and Easterday both approved the decision. Thus, Rich, the alleged biased decision-maker, had his recommendation approved by two other managers, thereby ensuring a proper review of the termination. *McLaughlin*, 486 U.S. at 135 n.13 ("If an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful."); *Koehler*, 268 F. App'x at 403 (same).

14

Finally, it is significant that Crouch was rehired at age 56 in 2006 after a previous stint at the Company, thereby evidencing Defendant's propensity to hire older workers as opposed to rejecting or terminating workers because of their age.  (Trial Test. of Crouch, pp. 19). Klabanoff was also hired in 2006 well into the protected age group at age 53, again showing Defendant's willingness to hire older workers and its nondiscriminatory attitude towards age.  (Trial Test. of Klabanoff, p. 34).   Additional evidence verified other instances of the Company hiring older workers besides Plaintiffs.  This evidence clearly contradicts the perception of a company biased against older workers, let alone one that commits willful violations of the ADEA.

In this case, no reasonable jury could have found that Defendant knowingly or recklessly disregarded the ADEA because the evidence falls far short of meeting that standard.  *Miller v. Raytheon Co.*, Nos. 11-10586, 11-10988, 2013 WL 1845586, *4 (5th Cir. May 2, 2013) (stating that jury verdicts finding willfulness are overturned when "no reasonable jury could have found that an employer knowingly or recklessly disregarded the ADEA") (attached as **Exhibit N** to the Motion).  Accordingly, there is no basis for a finding of willfulness and an award of liquidated damages for either Plaintiff.

**F.**   ***If the Court Grants Defendant's Motion as to Klabanoff But Not as to Crouch, Crouch's Damages Must Be Reduced***

As an alternate argument, if the Court finds that Defendant's Motion is well taken as to Klabanoff, but not as to Crouch, then any award of damages to Crouch must be reduced.  This is because the facts show that if Crouch had not been laid off in January 2011 but kept on as a coordinator on nights, he would have been laid off in July of 2011 when Klabanoff and the four other night and weekend shift breakdown employees were laid off (when their work was outsourced).  Accordingly, any award of back pay would be limited to six (6) months and not the approximately fifteen (15) months that the jury awarded Crouch, along with an equivalent

15

reduction in the Court's award of liquidated damages. Under this alternative argument, Crouch's damages would be reduced to $20,000 in back pay with an equal reduction to $20,000 in liquidated damages.[6]

### III.    ALTERNATIVELY, MOTION FOR A NEW TRIAL

#### A.    *Standard of Review*

In the alternative, Defendant moves for a new trial. Pursuant to Rule 59 of the Federal Rules of Civil Procedure, after the conclusion of a jury trial, a party may file a motion for a new trial within 28 days after the entry of judgment. Fed. R. Civ. P. 59(a)(b). The Court may grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "The general grounds for a new trial are that the verdict is against the clear weight of the evidence, that the damages are excessive, that the trial was not fair, or that substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions." 12 James Wm. Moore et al., *Moore's Federal Practice* § 59.13[1] (3d ed. 2012).

#### B.    *Jury's Verdict Against the Clear Weight of the Evidence*

"A court may set aside a verdict and grant a new trial when it is of the opinion that the verdict is against the clear weight of the evidence." *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820 (6th Cir. 2000) (quoting *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967)). "In ruling upon a motion for a new trial based on the ground that the verdict is against the weight of the evidence, a district judge must compare the opposing proofs and weigh the evidence" and

---

[6] Crouch was earning $40,000 a year at the time of his termination, or roughly $3,333 per month. The award of $50,000 in back pay is roughly fifteen months ($40,000 plus $10,000 as three month's back pay.) Six months would be $20,000 and the liquidated damages would add another $20,000, equaling $40,000, plus $10,000 in compensatory damages for a total of $50,000 for Crouch, and not the $110,000 awarded at trial and by the Court. (Entry of Judgment) (ECF No. 71); (Court's 5/14/13 Order) (ECF No. 72).

7/3123349.7
202855-301002

"it is *the duty of the judge* to set aside the verdict and grant a new trial, if [s]he is of the opinion that the verdict is against the clear weight of the evidence." *Bruner v. Dunaway*, 684 F.2d 422, 425 (6th Cir. 1982) (quotations omitted) (emphasis added); *Smith Corona Corp. v. Pelikan, Inc.*, 784 F. Supp. 452, 467 (M.D. Tenn. 1992).

As demonstrated above, the statements supposedly constituting direct evidence of discrimination do not meet the Sixth Circuit's requirements. Furthermore, as illustrated above, Plaintiffs have insufficient evidence to show that Defendant's legitimate, non-discriminatory reasons for its adverse employment actions were pretext for age discrimination.

Therefore, because Plaintiffs' evidence does not show age discrimination using either direct or circumstantial evidence, the jury's verdict is against the clear weight of the evidence and this Court should grant Defendant's Motion for a New Trial.

### C.     *Erroneous Admission of Evidence Amounts to More Than Harmless Error*

In addition to setting aside a verdict because it is against the clear weight of the evidence, a jury's verdict may be vacated if the "erroneous admission of evidence or improper jury instructions amounted to more than harmless error." *Kendel v. Local 17-A United Food & Commercial Workers*, No. 12-3409, 2013 WL 216020, at *7 (6th Cir. Jan. 22, 2013) (attached as **Exhibit I** to the Motion). In analyzing whether harmless error occurred, the Sixth Circuit applies the "fair assurance" standard. *Id.* "The fair-assurance standard calls for reversal when the appellate court lacks a 'fair assurance' that the outcome of a trial was not affected by evidentiary error." *Id.*

Under this standard, the Sixth Circuit first asks "whether evidentiary error occurred and then [it] examin[es] the proceedings in their entirety." *Id.* at *8. "Application of the test is highly sensitive to the unique context of the particular case, including the one-sided or closely

17

balanced nature of the evidence bearing upon the issue which the error arguably affected, and the centrality of the issue to the ultimate decision."  *Id.*

In this case, Defendant submits that the Court erred when it allowed the testimony of Shawn Fancher, a former body shop manager of Defendant.

1.   Fancher's Testimony Was Not Relevant and Unfairly Prejudicial to Defendant

The Court should not have permitted Fancher's testimony concerning Clarence Easterday's alleged statements requesting Fancher to pick "the oldest" person when trying to decide which person to lay off as the admission of these statements was not relevant and unfairly prejudicial to Defendant.  *See* Fed. R. Evid. 401-403.  According to his testimony, when Fancher would not do as Easterday requested, Easterday allegedly pulled up names on a computer and said "Charles Dawson, he's old, he's gone."  (Trial Test. of Shawn Fancher, pg. 6) (ECF No. 64) (transcript of testimony attached as **Exhibit J** to the Motion).  A few days later, Dawson was terminated, according to Fancher.[7]

Fancher's testimony concerning these statements should not have been admissible because the comments attributed to Easterday regarding Dawson had absolutely no relationship with Plaintiffs in this action and the decision to terminate them.  *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000) ("Statements by nondecisionmakers . . . [can not] suffice to satisfy the plaintiff's burden of demonstrating animus.").  (citation omitted).

Perhaps more importantly, Fancher could not testify to the date or timeframe of these alleged statements.  Fancher worked for Western Express from 2001-2011 and Easterday has been with the Company since 2002.  (Trial Test. of Fancher, p. 4); (Trial Test. of Easterday, p.

---

[7] When Easterday took the stand, he absolutely denied ever making these alleged statements to Fancher.  (Trial Test. of Easterday, p. 27).

18

14). The alleged comments, without a time frame for when they were made, could have occurred as far back as 2002, while Plaintiffs were terminated in 2011, some nine (9) years later. This makes Easterday's comments stray remarks, and stray remarks are not relevant to prove discrimination under Sixth Circuit caselaw. *Smith*, 220 F.3d at 760 (holding that comment made "long before" plaintiff's termination was "stray remarks" and "not relevant").

Furthermore, the admission of Fancher's testimony regarding his alleged conversation with Easterday is unfairly prejudicial and should have been excluded under Federal Rule of Evidence 403. Under this rule, the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Fancher's testimony concerning Easterday's alleged comments is unfairly prejudicial and substantially outweighs the probative value because (1) the comments had no relation to either the Plaintiffs or the decisions to terminate them and (2) there is no timeframe provided by Fancher on when these comments occurred. As noted above, the comments could have occurred as far back as 2002. Moreover, the limited probative value of the statements is substantially outweighed by the danger of confusing the issues for the jury by focusing the jury's attention on an event that had absolutely *no* connection to the termination of either Crouch or Klabanoff. [8]

Therefore, the comments were stray remarks because they were not related in any way to the terminations of the Plaintiffs and there is no evidence of when the alleged statement occurred. Accordingly, the comments are not relevant and should have been excluded under Federal Rule of Evidence 402.[9] In addition, even if relevant, any probative value the statements

---

[8] Easterday was notified by Morrison of the decision to lay off Crouch in January 2011. He was involved in the review of the employees laid off due to the outsourcing of the breakdown department's night and weekend shift in July 2011, again a business decision primarily made by Morrison.

[9] Defendant objected to the admissibility of Fancher's testimony on the grounds of relevance and prejudice. (Trial Test. of Fancher, pp. 9-17).

7/3123349.7
202855-301002

have is substantially outweighed by the danger that Defendant was unfairly prejudiced by these unrelated, undated comments and that the jury was confused.

2.    <u>Fancher's Testimony Was More Than Harmless</u>

Defendant suffered prejudice because of the admission of Fancher's comments concerning Easterday over Defendant's objection. Fancher's testimony against Easterday painted the executive vice president of Western Express as being someone who would affirmatively discriminate against someone based on their age. The Sixth Circuit has reversed jury verdicts based on the trial court's improper admission of stray remarks because they add "'smoking gun' type evidence" and add an "'emotional element' as a basis for the verdict.'" *Smith*, 220 F.3d at 760; *Schrand v. Federal Pacific Elec. Co.*, 851 F.2d 152, 156 (6th Cir. 1988) (in reversing jury verdict, held that age-related comments by non-decision makers were irrelevant, "embellished the circumstantial evidence directed to that issue by adding 'smoking gun' type evidence'" and "offered an emotional element that was otherwise lacking as a basis for a verdict" for the plaintiff"); *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 n.2 (6th Cir. 1986) (affirming trial court's grant of judgment notwithstanding the verdict based, in part, on trial court's holding that ageist comments were "too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination").

As demonstrated above, Fancher's testimony offered undated stray remarks from Easterday that were not relevant, unfairly prejudicial to Defendant, and confused the jury. Applying the above-cited caselaw, the admission of these comments over Defendant's objection was not harmless. Because of the significance of this error, the Court lacks the fair assurance that the outcome of the trial was not affected. Thus, Defendant's Motion for a New Trial should be granted.

20

### D. Erroneous Jury Instruction, Verdict Forms Were Confusing, Misleading, and Prejudicial

"An erroneous [jury] instruction, unless harmless, requires a new trial."  *Kendel*, 2013 WL 216020 at *8 (quoting *Anderson v. Branen*, 17 F.3d 552, 556 (2nd Cir. 1994)).  A jury instruction is erroneous if the instruction does not "adequately inform the jury of the relevant considerations and provide the jury with sound basis in law with which to reach a conclusion." *Lee v. Metro. Govt. of Nashville & Davidson Cnty.*, 432 F. App'x 435, 448 (6th Cir. 2011).  If the instruction is found to be erroneous, then the erroneous instruction requires reversal if the instruction is found to be "confusing, misleading, and prejudicial."  *Pivnick v. White, Getgey & Meyer Co., LPA*, 552 F.3d 479, 488 (6th Cir. 2009) (quoting *United States v. Wells*, 211 F.3d 988, 1002 (6th Cir. 2000)).

Initially, Defendant argued to the Court that there was not sufficient evidence in the record to support a finding of willfulness and thus no reason to submit the issue of willfulness to the jury.  The Court denied Defendant's argument.  Defendant had also submitted a proposed jury instruction on willfulness, which the Court declined to utilize.  Finally, Defendant objected to the Court's proposed instruction on willfulness because it did not include language regarding the doubling of back pay as liquidated damages which the Court overruled.

Defendant submits that the Court's jury instruction on "WILLFULNESS" was erroneous. Specifically, the instruction stated the following, *inter alia*:

> If you determine that the Defendant violated the ADEA with respect to a Plaintiff, you must consider whether the Defendant's conduct was willful.  *If you find willfulness on the part of the Defendant in discriminating against a Plaintiff, the Court will award that Plaintiff with money damages in addition to any damages you have awarded.*  Your only duty in this regard is to determine whether the Defendant acted willfully in violating a Plaintiff's right to be free from age discrimination.

7/3123349.7
202855-301002

"WILLFULNESS" Jury Instruction (ECF No. 61, Page 30) (emphasis added).

The emphasized portion of the above instruction does not inform the jury of the consequences of their finding of willfulness. Specifically, the instruction does not instruct the jury that if they find willfulness, the Court will double the back pay awarded to the Plaintiffs as Defendant requested the instruction to include during the charge conference.[10] In fact, the instruction makes no reference to "liquidated damages," which Defendant requested be included. The instruction states that if willfulness is found, the Court "will award that Plaintiff with money damages in addition to any damages you have awarded." The instruction does not inform the jury, however, of a central tenet of the willfulness analysis, *i.e.*, that any award of back pay is doubled. Accordingly, this instruction did not adequately inform the jury of the relevant considerations, nor did it provide the jury with a sound basis in law to deliberate regarding willfulness because it did not inform them of the consequences of their actions. *See Wheeler v. McKinley Enter.*, 937 F.2d 1158, 1164-66 (6th Cir. 1991) (reversing verdict because willfulness jury instruction was deficient as the jury "was never told what difference it would make if the defendant had acted willfully"). On the other hand, inclusive language regarding double damages has been approved as instructive. *See Ray v. IUKA Special Mun. Separate School Dist.*, 51 F.3d 1246, 1252-53 (5th Cir. 1995) (finding that the court's instruction that "liquidated damages are double damages" "constituted merely a helpful explanation to the jury of the significance of their determination on willfulness and how it could impact upon damages"). Therefore, the Court's instruction is erroneous.

---

[10] Defendant requested the instruction include "doubling back pay" in reference to the award of money damages but the Court declined to include the reference in the instruction. (Trial Charge Conf., pp. 6-7) (ECF No. 73) (partial transcript of charge conference attached as **Exhibit K** to the Motion). Defendant also submitted a Proposed Jury Instructions, No. 25 entitled Liquidated Damages –Showing Willfulness. (Defendant's Proposed Jury Instructions, No. 25) (ECF No. 42) (proposed jury instruction No. 25 attached as **Exhibit L** to the Motion).

7/3123349.7
202855-301002

Because of this error, the instruction is also confusing and misleading. While the jury was told that an additional award of money damages would be added on by the Court, the instruction does not state the legal requirement that back pay would be doubled as liquidated damages. The instruction did not make this consequence clear. *Wheeler*, 937 F.2d at 1164-66; *cf.* *Cassino v. Reichhold Chems., Inc.*, 817 F.2d 1338, 1348 (9th Cir. 1987) ("Here, the jury was properly instructed that it could award Cassino liquidated damages 'up to an amount equal to unpaid wages to which you find him entitled.'"). An additional award of money damages could be $100.00 or $1,000.00 or some other sum that comes nowhere close to the combined $65,000 in liquidated damages that this Court awarded because of the jury's flawed finding. As such, the instruction fails to provide the jury a reasonable understanding of what the ramification was of a finding of willfulness. Defendant submits this error was prejudicial because the jury found willfulness for both Plaintiffs and this Court entered a judgment against Defendant doubling the back pay awards.

Furthermore, Defendant submits that the verdict forms are in error because Item 4, regarding the question of willfulness, also fails to advise the jury that such a finding would result in the Court awarding monetary damages by doubling the jury's award of back pay. Defendant's proposed verdict form contained language that a finding of willfulness would entitle Plaintiff "to an award of double his back pay amount as liquidated damages under the ADEA" such that the jury would clearly understand the consequences of their determination.[11] However, the Court used verdict forms that simply posed the question of whether Plaintiffs proved that Defendant's

---

[11] Defendant's Proposed Verdict Forms for Plaintiffs Crouch and Klabanoff (ECF No. 38 and 39) are attached as **Exhibit M** to the Motion.

7/3123349.7
202855-301002

conduct was a willful or reckless violation of the ADEA without any mention of the damages that would attach as a result of answering "yes" to the question.[12]

Accordingly, Defendant was prejudiced by this Court's confusing and misleading jury instruction and verdict forms and a new trial should be held to remedy these errors.

### III. CONCLUSION

For the above stated reasons, Defendant's Renewed Motion for Judgment as a Matter of Law should be granted because the evidence introduced is insufficient to prove age discrimination via direct or circumstantial evidence. Furthermore, there is not sufficient evidence to supporting a finding of willfulness in the violations of the ADEA. Alternatively, Defendant's Motion for a New Trial should be granted because the verdict is against the clear weight of the evidence, because of the erroneous and not harmless admission of Shaun Fancher's testimony concerning Clearance Easterday's alleged statements, and because of the erroneous, confusing, misleading, and prejudicial jury instruction and verdict forms concerning willfulness under the ADEA.

---

[12] Court's Verdict Forms (ECF No 61, pg. 36-39). Defendant further submits that this question, posed as the last question on the verdict forms, left it as a "dangling question" without adequate explanation to instruct the jury what a "yes" response actually meant.

7/3123349.7
202855-301002

Respectfully submitted,

BRADLEY ARANT BOULT CUMMINGS LLP

*/s/Matthew C. Lonergan*

Matthew C. Lonergan (BPR No. 010798)
1600 Division Street
Suite 700, P.O. Box 340025
Nashville, Tennessee 37203
(615) 244-2582
mlonergan@babc.com

Roland M. Lowell (BPR No. 3874)
Western Express, Inc. General Counsel
7135 Centennial Place
Nashville, TN 37209
(615) 259-9920
rlowell@westernexp.com

*Attorneys for Defendant Western Express, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing is being is being served via the Court's ECF system on this the 10th day of June, 2013, on:

Stephen W. Grace
1019 16th Avenue, South
Nashville, TN 37212
sgrace@sgracelaw.com

Kerry E. Knox
Castelli & Knox, LLP
117 S. Academy Street
Murfreesboro, TN 37130
kek@castelliknox.com

*/s/Matthew C. Lonergan*

Matthew C. Lonergan

7/3123349.7
202855-301002